CENTRAL PASTO VIEJO, INC., demandante y apelante, *v.* ARTURO APONTE, JR., y ANTONIO GONZÁLEZ, demandados y apelados.

No. 3553.—*Visto:* Junio 16, 1925. *Resuelto:* Marzo 16, 1926.

1. SENTENCIA—CASOS CONTENCIOSOS—CONFORMIDAD CON LAS DILIGENCIAS (*Process*), ALEGACIONES, PRUEBAS Y VEREDICTOS Y CONCLUSIONES—CONFORMIDAD CON LA PRUEBA PRESENTADA — SENTENCIA SOSTENIDA POR LA EVIDENCIA.—Ejercitada acción en cobro de dinero en que se solicita sentencia contra varios demandados individualmente y como socios haciendo negocios bajo un nombre determinado, y estimada por la prueba la no existencia de la sociedad, la sentencia que sólo condena a pagar a aquel de los demandados que originó y se hizo cargo de la cuenta reclamada, no es errónea.

2. APELACIÓN Y ERROR—REVISIÓN—ERRORES NO PERJUDICIALES—RESOLUCIÓN NEGANDO SENTENCIA SOBRE LAS ALEGACIONES.—Dados los antecedentes del caso de autos y la naturaleza de la prueba producida y considerando que la verdadera cuestión litigiosa, entre las partes, se resolvió sin sorpresa, o falta de preparación para la demandante, la resolución de la corte negándose a dictar sentencia sobre las alegaciones se resolvió no fué perjudicial al demandante.

SENTENCIA de *Pablo Berga*, J. (Humacao), declarando sin lugar la demanda sobre cobro de dinero en cuanto a ciertos demandados, y con lugar respecto a otro, con costas. *Confirmada.*

*Henry G. Molina, González Fagundo & González, Jr.,* abogados de la apelante; *Arturo Aponte, C. Travecier* y *Fernando Gallardo,* abogados de los apelados.

EL JUEZ ASOCIADO SEÑOR FRANCO SOTO, emitió la opinión del tribunal.

La Central Pasto Viejo, Inc., inició este pleito en cobro de dinero contra Arturo Aponte, Jr., Antonio González y José López del Valle, solicitando de la corte inferior dictara sentencia contra dichos demandados "individualmente y como socios haciendo negocio bajo el nombre de 'Aponte & González'" y condenarles a pagar a la demandante mancomunada y solidariamente la suma de $3,033.24, con intereses a razón del 9 por ciento anual, y costas. Para sostener esta petición se alegó, en resumen, que según ha sido informada y cree la demandante, los demandados constituyeron una sociedad agrícola bajo el nombre de Aponte & González, en o antes del día 3 de septiembre de 1921, con el fin de dedicarse a la siembra y cultivo de cañas de azúcar y que allá por el día 3 de septiembre de 1920 la demandante, a solicitud de Arturo Aponte, Jr., abrió una cuenta corriente a favor de la mencionada sociedad para los gastos de siembra, originándose así el saldo que se reclama.

La corte inferior dictó sentencia condenando a Antonio González a pagar dicha suma de $3,033.24, eximiéndole del pago de intereses y declarando sin lugar la demanda en cuanto a los demás demandados, siendo esa declaración el motivo de esta apelación.

[1] La corte inferior al apreciar la prueba estimó la no existencia de la sociedad "Aponte & González" y de que Arturo Aponte, Jr., no tuvo intervención para que se abriera a su "solicitud" una cuenta corriente a favor de la entidad que aparece en los libros de la demandante bajo el nombre de "Aponte & González". La corte inferior en esos puntos

no hizo otra cosa sino resolver cuestiones de hecho en que algunas de sus circunstancias fueron ampliamente analizadas en el caso No. 3767, *Central Pasto Viejo, Inc.,* v. *Arturo Aponte, Jr.,* de enero 29, 1926 (34 D.P.R. 890). Nos referimos a la correspondencia que se alegó haberse enviado a Aponte incluyéndole extracto de cuentas y a las conferencias que Baragaño y Walker tuvieron con el demandado, interviniendo otras personas de una y otra parte. Pero al particularizar la cuenta que por el presente pleito se reclama, aparece claramente que cuando se inició la llamada cuenta de refacción de Aponte & González, y que se alega que se abrió a requerimiento de Arturo Aponte, Jr., este demandado estaba ausente de Puerto Rico. Nada consta por escrito en cuanto al contrato en sí de refacción y lo más importante de la declaración del administrador Baragaño en que trata de explicar el origen de la cuenta y las relaciones de los demandados entre sí y la central, dice así:

"Esta cuenta fué originada allá para fines de agosto o principios de septiembre: el señor González acompañado del señor López del Valle, estaba en la oficina de la Central, y cuando yo entré en la oficina, se encontraban los dos dentro de la oficina, estando también el cajero de la Central, el señor Rafael P. Vargas, y el escribiente Manuel Santiago, y al llegar yo a la oficina el señor González me dijo que ellos iban a buscar un dinero para refacción de cañas que estaban sembradas en la finca Santa Teresa y en el Caracolillo; que el señor Aponte les dijo que ellos podían tomar algún dinero para la refacción.

    *        *        *        *        *        *

"Y yo le dije que yo no tenía ninguna orden del señor Aponte para eso, y además, no se había hecho ningún contrato de refacción. Y me dijo entonces, que estaban sembrando cañas en la ·finca Santa Teresa y en el Caracolillo que iban a ser molidas en la Central, y toda vez que era muy poco tiempo se podría dar el dinero, para en cuanto regresara el señor Aponte arreglar eso y pagarlo. Y yo accedí a dar el dinero. Entonces el señor Aponte no llegó en diciembre y llegó en febrero, y entonces en diciembre yo le llamé la atención al señor González, que la cuenta crecía y no había contrato de refacción, y entonces me informó que cuando el señor Aponte regresara que él se haría cargo de pagar la cuenta.

"¿Quién se haría cargo?—González; pero él nunca se hizo cargo de pagar las cañas.

"Hon. Juez.—¿Cuáles fueron las palabras, y dispense?—El señor González me dijo que si al regresar el señor Aponte de su viaje, y estaban conformes, que el señor González se haría cargo de la cuenta, y eso nunca lo hizo, sino que después de llegar el señor Aponte, el señor González fué a buscar un semanal y yo le dije que no se lo podía dar, porque yo le había dado aquel dinero para cuando regresara el señor Aponte arreglar el pago de la cuenta o hacer un crédito refaccionario, y me solicitó que le diera el último semanal y que no tomaría ya hasta que entre ellos no se arreglasen las cuentas.

"¿Y cuando regresó el señor Aponte tuvo usted con él alguna conversación con respecto a esa cuenta?—Sí, recién llegado cuando yo le dije eso del semanal él se vino para Humacao.

"¿Quién es él?—González, el que fué a buscar el dinero, y desde la oficina del señor Aponte creo que me habló. . . . . Lcdo. Aponte: ¿Cree?—Se me habló.

"¿Quién le habló?—Yo tengo la creencia que fué el señor Aponte, que me dijo que le diera el último semanal.—Lcdo. Molina: Ya está hecha la pregunta y contestada.

"¿Por qué tiene esa creencia, señor Baragaño?—Porque lo recuerdo ahora, que creo que era la voz del señor Aponte me parece que fué él quien me habló en cuanto al semanal.—Lcdo. Aponte: Yo pido la eliminación en cuanto a lo que manifiesta que cree.— Testigo: Yo no podría decir que fué una conversación personal con el señor Aponte porque recordaría perfectamente el hecho. Yo creo que fué por teléfono, desde su oficina."

Esta declaración es más bien incongruente con la demanda en donde se afirma que la cuenta se abrió a solicitud de Aponte, y por otra parte el testigo demuestra cierta inseguridad al referir la conversación que tuvo con Aponte para así, no obstante, echar sobre él el peso de la responsabilidad de otros y que asumiera *in sólidum* la relación contractual. La corte inferior no pudo llegar a ese extremo y sus conclusión fué correcta.

[2] Resueltas las cuestiones de hecho, el único punto legal que levanta la apelante se refiere a la resolución de la corte inferior negando dictar sentencia sobre las alegaciones.

Sostiene la apelante que habiéndose jurado la demanda

y no negándose específicamente sus alegaciones en la contestación por los demandados, ésta es insuficiente.

La demanda original se interpuso en octubre 6, 1921. Después de mociones para eliminar y excepciones previas y solicitud de prórroga para contestar, se anotó la rebeldía de los demandados, y en marzo 3, 1922, se dictó sentencia en su contra. En marzo 30, 1922, a petición de los demandados, se dejó sin efecto la anotación y sentencia en rebeldía y los demandados archivaron su contestación. El juicio se señaló por primera vez para el 24 de mayo de 1922 y fué suspendido a moción de los demandados. En diciembre 26, 1922, la demandante pidió permiso para presentar una demanda enmendada, consistente la enmienda en la inclusión en la demanda de otro demandado, José López del Valle, por haberse enterado la demandante después de radicada la demanda primitiva, que aquél también había sido interesado o era uno de los socios de Aponte, González & Ca., y en añadirse a la cuenta objeto del pleito, el anticipo en efectivo de $112.35 a Aponte & Cía., por haberse omitido ''como consecuencia de hechos establecidos en otro litigio ante esta corte,'' según alega en su moción la demandante. La demanda así enmendada fué archivada y luego de ser excepcionada por falta de causa de acción, los demandados en febrero 27, 1923, contestaron la demanda en igual o parecidos términos que lo hicieron a la demanda original. El 3 de julio de 1923 fué que se presentó la moción pidiendo sentencia sobre las alegaciones. Ya estaba señalada la vista del caso para dos días después, julio 5, 1923, y al empezarse el juicio, que fué celebrado en dicha fecha, la corte inferior negó la moción de la demandante.

Bajo los antecedentes de este caso y fundada la demanda en la reclamación del saldo de una cuenta de refacción para la siembra de cañas y dada la naturaleza de la evidencia producida que se refería a la presentación de ciertos estados de cuenta y de su alegada remisión al demandado Arturo Aponte, contra quien se hacía recaer todo el peso de

la responsabilidad, lo que, en los particulares de esa prueba quedó ampliamente discutido, según más arriba se ha indicado, y que la verdadera cuestión litigiosa en este caso, entre las partes, se resolvió sin sorpresa o falta de preparación para la demandante, parecía bien obvio que los demandados hubieran podido fácilmente enmendar su contestación y por consiguiente, la resolución de la corte de no acceder a dictar sentencia sobre las alegaciones, de acuerdo con lo que dispone el artículo 142 del Código de Enjuiciamiento Civil, no fué perjudicial a la pretensión de la demandante.

Por todo lo expuesto *debe confirmarse la sentencia apelada.*